UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**MICHEAL CODY TORRES,**

   Plaintiff,

v.                                               No. 4:25-cv-00737-P

**CITY OF FORT WORTH, ET AL.,**

   Defendants.

## OPINION & ORDER

On July 10, 2025, Plaintiff Michael Cody Torres filed a complaint against Defendants Chief Officer Robert Alldredge, Officer Rafael Salazar, Officer Steven Rodriguez, Officer Lawrence Wolfe, Officer Dutch Rovell, Officer Corporal Cox, Officer Fernando Galvan, Officer Jason Kim, Sergeant Tyler, and the City of Fort Worth. ECF No. 1. The Complaint, in short, alleges Defendants violated the First, Fourth, and Fourteenth Amendment rights of Plaintiff pursuant to 42 U.S.C. § 1983 when Defendants enforced Fort Worth Ordinance § 23-8 against Plaintiff's speech in and around the Fort Worth Stockyards. ECF No. 1. The Complaint also asserts *Monell* liability claims against the City of Fort Worth. ECF No. 1. In response, on August 25, 2025, Officers Kim, Rodriguez, Salazar, and Wolfe filed a Motion to Dismiss. ECF No. 25. Then, on August 27, 2025, Corporal Cox, Dutch Rovell, and Sergeant Tyler filed a Motion to Dismiss. ECF No. 29. That same day, Officer Galvan filed a Motion to Dismiss. ECF No. 30. The City of Fort Worth filed its own Motion to Dismiss on September 26, 2025. ECF No. 38. Having considered the filings and for the reasons detailed below, the Court finds that all Motions should be **GRANTED**.

## BACKGROUND

Plaintiff's claims against the City arise out of the actions of the Officers—whom he also brings claims against. ECF No. 1. Plaintiff specifically alleges that (1) all Defendants enforced Fort Worth

Ordinance § 23-8 against Torres in violation of § 1983 and the First and Fourteenth Amendments, and that the City specifically violated § 1983 and the First and Fourteenth Amendments by maintaining an unconstitutional custom, policy, or practice exhibiting deliberate indifference to the constitutional rights of Christian evangelists and have "systemic[ally] persecute[ed]" Christian street preachers, "punishing them in order to suppress their religious message, based solely on the content of their message," ECF No. 1; (2) the Fort Worth Ordinance is facially unconstitutional; (3) the Defendants violated Texas Constitution Article I § 8; and that (4) Defendants violated 42 U.S.C. § 1985 by conspiring to violate the First, Fourth, and Fourteenth Amendments and Texas Constitution Article I § 8. ECF No. 1.

Plaintiff, Michael Cody Torres, is a Christian street preacher for Proclaiming Christ Ministries. Proclaiming Christ has endeavored to preach at the Fort Worth Stockyards—a busy entertainment and dining district—for years. The City of Fort Worth Noise Ordinance, Chapter 23 § 23-8, states: "[N]o person shall make, cause, suffer, allow or permit unreasonable noise in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be a requirement for [its] enforcement." Section 23-8 defines "unreasonable noise" as "[a]ny unreasonably loud and unnecessary noise which causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof;" or "[a]ny noise of such character, intensity and continued duration, which substantially interferes with the comfortable enjoyment of private homes by persons of ordinary sensibilities." § 23-8(b).

Torres, Proclaiming Christ Ministries, and the Fort Worth Police Department have a history of similar disputes dating back as far as at least 2017. *See* Consent Order and Final Judgment, *Grisham v. City of Fort Worth*, No. 4:15-cv-00324-A (N.D. Tex. July 29, 2015); Settlement Agreement, *Torres v. City of Fort Worth*, No. 4:23-cv-00060-O (N.D. Tex. Mar. 29, 2023) (*Torres I*). The particular facts leading to this action, however, began in August 2023. Plaintiff alleges that on August 26, 2023, Proclaiming Christ Ministries went to the Stockyards to preach. Plaintiff, although not himself preaching, was approached by Officers

2

Rafael Salazar, Fernando Galvan, and Sgt. Tyler. The Officers allegedly "informed Plaintiff that someone had complained that the preaching was offensive to them." ECF No. 1 at 9. Specifically, the Officers said "if anyone is offended and complains, they must issue a citation." ECF No. 1 at 10. Accordingly, Officer Galvan issued a citation, and the Officers arrested Plaintiff. ECF No. 1 at 10. That citation was dismissed on May 1, 2024, in Fort Worth Municipal Court. ECF No. 1 at 10. On December 2, 2023, Officer Salazar again approached Plaintiff on East Exchange Avenue and told Plaintiff that he could not preach there "because they were disturbing the peace." ECF No. 1 at 10.

On December 30, 2023, Officer Rafael Salazar, Officer Dutch Rovell, and Corporal Cox approached Plaintiff in the Stockyards. ECF No. 1 at 10. Based on a noise complaint, the Officers instructed Plaintiff to stop preaching. ECF No. 1. at 10. Although Plaintiff tried to persuade Officer Salazar of the lawfulness of the preaching, Officer Salazar persisted, and the preachers stopped preaching. ECF No. 1 at 10.

On April 13, 2024, Officer Rafael Salazer, Officer Cantu, Commander Jason Kim, and other officers, approached Plaintiff while he was preaching in the Stockyards yet again. The Officers informed Plaintiff that he could not speak with amplification "if the amplification could be heard over the ambient noise." ECF No. 1 at 11. Under threat of citation, Plaintiff accordingly stopped preaching. ECF No. 1 at 11.

On April 22, 2024, Plaintiff and others went to a public sidewalk—this time in Sundance Square in downtown Fort Worth—to preach. ECF No. 1 at 11. Following a complaint, the Officers again informed Plaintiff and others that they needed to stop preaching or else face criminal charges, and they obliged. ECF No. 1 at 11.

On May 1, 2024, Plaintiff again went to the Stockyards to preach, and a group of unnamed officers asked Plaintiff to lower the volume. ECF No. 1 at 11. The Plaintiff obliged, and the Officers left. A few minutes later, following some complaints, the Officers told Plaintiff that he needed to stop preaching altogether or else face a citation. ECF No. 1 at 12. One of the officers allegedly said "when someone is offended by something, [they] ha[ve] to take action because that is their job." ECF

3

No. 35 at 5. Those charges were ultimately dismissed. ECF No. 1 at 12. On August 3, 2024, Plaintiff went to the Stockyards to preach with others using a speaker. ECF No. 1 at 12. Officer Rafael Salazar noticed and—along with Officers Steven Rodriguez and Lawrence Wolfe—wrote up a disorderly conduct citation for using voice amplification. ECF No. 1 at 12. Office Wolfe said the speaker was the problem—not the content of the preaching. ECF No. 1 at 12. Plaintiff soon thereafter started to preach without noise amplification, but Officers Salazar, Wolfe, and Rodriguez, nevertheless, arrested Plaintiff for disorderly conduct by "elevated voice volume." ECF No. 1 at 12. Plaintiff then spent the night in jail. ECF No. 1 at 13. When Plaintiff went to contest the August 3, 2024 citations, the charges were dismissed by the prosecutor. ECF No. 1 at 13.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281

4

(5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**B. Section 1983 and Qualified Immunity**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

1. The *Monell* standard

To hold a city liable under § 1983, a plaintiff must show that "the municipality itself caused" the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). Such constitutional violations may occur due to the municipality's official, promulgated policies; its pervasive customs or practices; its failure to train, supervise, or discipline employees; or decisions or acts by final municipal policymakers. *Monell*, 436 U.S. at 690–95. To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491, 529 (W.D. Tex. 2025) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)). If an official policy is not explicit, "widespread practice of city officials" can suffice if the practice is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* If no constitutional violation occurred, the plaintiff's *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A *Monell* claim predicated on a failure-to-train theory requires a plaintiff to show "(1) that the municipality's training procedures were

5

inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Such a claim must be brought against the municipality's final policymaker. *Harris*, 489 U.S. at 389. And "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." C*onnick v. Thompson*, 563 U.S. 51, 61 (2011).

To establish inadequate training procedures, "a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). "The inadequacy of training must be closely related to the injury." *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

Additionally, deliberate indifference is a stringent standard under § 1983. To show deliberate indifference, "[n]otice [to the municipality] of a pattern of similar violations is required." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quotation marks omitted). "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation marks omitted). Thus, the municipal employees' actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *cf. Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (holding that twenty-seven prior incidents of excessive force over a three-year period were not sufficiently numerous to constitute a pattern). A narrow exception to the pattern of similar violations exists but "is generally reserved for those cases in which the government actor was provided *no training whatsoever*" with respect to the relevant constitutional duty. *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (emphasis added).

### 2. The Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. The second prong of the test can be sometimes "better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

### C. Fourth Amendment

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "[I]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). "[A] Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits." *Sauceda v. City of San Benito*, 78 F.4th 174, 187 (5th Cir. 2023) (quotations omitted). Warrantless searches and seizures are unreasonable unless the government shows that an exception applies. *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011).

7

**D. First Amendment**

The First Amendment provides a fundamental right to share views in public forums. *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). That's because the "First Amendment protects the right of every citizen to reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Id.* at 655 (cleaned up). In public forums, regulations on speech must be content-neutral, narrowly tailored to serve a significant government interests, and leave open ample alternative channels for communication to pass constitutional muster. *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 622 (5th Cir. 2007).

## ANALYSIS

**A. Plaintiff fails to state a claim that Defendant Officers plausibly violated the First Amendment, Fourth Amendment, and Fourteenth Amendment as-applied to Plaintiff.**

Plaintiff accuses Defendants of interfering with their free speech rights by enforcing Chapter 23 § 23-8(d)(2), depriving them of equal protection therein, and violating their Fourth Amendment rights by confiscating their amplification equipment.

   1. <u>Plaintiff fails to overcome qualified immunity because he did not have a clearly established constitutional right to preach at a loud volume.</u>

No clearly established law precluded the Officers from enforcing the Fort Worth Sound Ordinance against Plaintiff. Police Officers have the duty of enforcing laws, such as city ordinances that have not been held to be unconstitutional. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). So without a declaration of unconstitutionality, the odds are stacked against Plaintiff's argument that the law was clearly established to put the Officers on notice. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) ("[T]he Supreme Court has never denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated. This indeed would seem to be the paradigmatic way of showing objectively reasonable conduct by a public official."). For a law to be considered clearly established, the plaintiff

8

"bear[s] the burden of showing that the right was clearly established" based on "existing precedent" that "squarely governs the specific facts at issue." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). So the constitutional or statutory question at issue must be "beyond debate." *Id.* at 600–01. Otherwise, only in extreme circumstances wherein the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws" does an exception exist. *DeFillippo*, 443 U.S. at 38.

That rarely-used exception does not apply here though, and the law at issue is not clearly established as unconstitutional. First, the Fort Worth Sound Ordinance has never been declared to be unconstitutional. Second, it is true—as Plaintiff says, the "First Amendment right to free speech is clearly established in general terms" as is the right to speak "in public." ECF No. 34 at 15. But that description does not delineate the right particularly enough to apply to this set of facts—and to clearly establish the right to preach at the volume Plaintiff preached at in Fort Worth. In other words, it is important for the Court "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)(cleaned up).

2. <u>Plaintiff also fails to overcome qualified immunity because the Officers did not violate his First Amendment rights.</u>

Although concluding that this right is not clearly established is sufficient to grant qualified immunity, the Court also rules that the Officers did not violate Plaintiff's First Amendment rights. Because the Officers had probable cause to arrest and/or cite him, they lawfully infringed on Plaintiff's preaching activity. Here, the Stockyards where Plaintiff preached constitute a traditional public forum. Therefore, restrictions on Plaintiff's speech must be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open adequate alternative means of communication to pass constitutional muster. *Houston Chronicle Pub. Co.*, 488 F.3d at 622. But, Defendants' actions clear this legal threshold.

Plaintiff expresses concern that the Officers cited noise levels as a pretext for enforcing a "heckler's veto"—a ban on speech one

9

substantively disagrees with—but fails to provide a plausible basis for making such an inference. To the contrary, on various occasions, the Officers cited noise levels as the basis for either instructing Plaintiff to stop preaching through a loudspeaker or for citing him altogether. Perhaps the best fact Plaintiff asserts is that on one occasion an Officer said he was compelled to act because someone was "offended." But being offended in no way necessitates that the religious message created the offense—as opposed to the volume of the message. And coupled with the numerous other encounters with the Police that all concerned excessive noise levels, the only plausible inference to make is that the Officers were concerned about noise levels alone.

What's more, the "government has a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (cleaned up). Such regulations are "justified without reference to the content of the regulated speech, [and must be] narrowly tailored to serve a significant governmental interest, and [they must] leave open ample alternative channels for communication of the information." *Id.* (cleaned up). In light of that caselaw, the Officers did not violate Plaintiff's First Amendment rights by enforcing a constitutionally sound regulation. *See infra*, Section B. Indeed, Plaintiff's Complaint mentions many instances in which Defendants concerned themselves with the volume and amplification of the speech. Accordingly, they believed Plaintiff violated the Fort Worth Sound Ordinance, which gave them probable cause to arrest and/or cite Plaintiff.

3. <u>The Fourth Amendment and Fourteenth Amendment claims are conclusory and thus fail to overcome qualified immunity.</u>

As for the Fourth Amendment and Fourteenth Amendment claims, they also fail to overcome qualified immunity because the pleadings are overly conclusory. Plaintiff claims the Defendants violated the Fourth Amendment when they confiscated preaching equipment. But shotgun pleading is inadequate—which is what Plaintiff did here by generally and vaguely accusing all (or perhaps some) Defendants of confiscating equipment. *See Roe v. Johnson Cnty., Tex.* No. 3-18-cv-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex., July 29, 2019), *rec accepted*, 2019 WL

10

3980737 (N.D. Tex. Aug. 22, 2019) (cleaned up). And "[t]he Court disregards bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *see also Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015) ("In accordance with our case law, we examine each individual's entitlement to qualified immunity separately.") (cleaned up). The same analysis applies to the Fourteenth Amendment claim, as Plaintiff has only vaguely asserted that Defendants failed to provide him with equal protection under the law.

## B. Plaintiff fails to state a claim that the Fort Worth Sound Ordinance violates the First Amendment and Fourteenth Amendment on its face.

Plaintiff seeks a court order for declaratory and injunctive relief declaring that the Fort Worth Sound Ordinance, § 23-8(d) (1), is unconstitutional on its face. To win a facial challenge, Plaintiff must demonstrate that there is "no set of circumstances [] under which the challenge ordinance would be valid," or "that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up). But because Plaintiff (1) fails to plausibly show that the Fort Worth Sound Ordinance is content-based and (2) fails to plausibly assert that the Fort Worth Sound Ordinance is unconstitutionally vague in application, he fails to state a claim.

### 1. The Fort Worth Sound Ordinance is content-neutral and passes constitutional muster.

The Fort Worth Sound Ordinance is content-neutral because it only regulates the manner of expression—that is the volume of speech and not the substance of the speech. In a public forum, "the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward*, 491 U.S. at 791. Those restrictions pass constitutional muster as "reasonable" if they (1) "are justified without reference to the content of the regulated speech," (2) are "narrowly tailored to serve a significant governmental interest," and (3) "leave open ample alternative channels for communication of the information." *Id.* The Ordinance could also be unconstitutional even if it is content-neutral in

11

its text, if the underlying governmental purpose was to regulate the content of speech it disagreed with. *Id*. But not so here.

The Ordinance accordingly only prohibits "unreasonable loud noise." It contains no reference to content. And the preamble to the Ordinance demonstrates this neutral purpose: "This section is designed to regulate noise by various alternative means in order to allow the enforcement of noise regulations at times when and by persons for whom noise meters are not available." § 23-8(a)(2). "A noise may be in violation of this section because it is disturbing to a reasonable person of ordinary sensibilities or because it exceeds the decibel level restrictions below." *Id*.

Regulating overly loud noises in public places is considered a valid governmental interest. *City of Ladue v. Gilleo*, 512 U.S. 42, 48 (1994). Accordingly, the Fort Worth Sound Ordinance promotes a valid governmental interest without reference to the content of speech. And it is narrowly tailored and leaves open ample alternative channels by still allowing citizens to exercise their right to free speech in a variety of ways at the appropriate volume.

2. <u>The Fort Worth Sound Ordinance is not unconstitutionally vague because it imposes an objective legal standard.</u>

The Void for Vagueness doctrine poses no constitutional problems to the Ordinance as well because the law sets an objective legal standard for officers to draw from when enforcing the statute. Plaintiff argues, however, that they have satisfied all that is needed at the 12(b)(6) stage by asserting that the Ordinance is unconstitutionally vague because it merely prohibits "unreasonably loud noises." His concern is that this will lead to the loss or substantial impairment of critical constitutional liberties due to its potentially overly broad sweep, chilling effects, and inconsistent enforcement.

But, the standard imposed by the Ordinance is not subjective, and Plaintiff has asserted no facts to make one believe that it has been disproportionately enforced in a grossly inconsistent manner. And Plaintiff certainly fails to show that is lacks "any plainly legitimate

sweep" in application to speakers—particularly considering the amplification used by street preachers here.

The Fifth Circuit has upheld a similar noise ordinance—one that prohibited noise that would "annoy a reasonable person" and held that it was not unconstitutionally vague. *Munn v. City of Ocean Springs, Miss.*, 763 F.3d 437, 442 (5th Cir. 2014). In that case, the concern was whether the phrase "annoy a reasonable person" imposed a subjective standard or not. The Fifth Circuit held that it did not, because it is clear that the "reasonable" person must be annoyed. The "reasonable person" and that person's preferences are distinct from any other random individual's atypical preference, a "non-reasonable" person one may say.

Here, the Ordinance is similarly objective. The definition of unreasonable noise is as follows: "any unreasonably loud, disturbing and unnecessary noise which causes material distress, discomfort or injury to *persons of ordinary sensibilities in* the immediate vicinity thereof; or any noise of such character, intensity and continued duration, which substantially interferes with the comfortable enjoyment of private homes by *persons of ordinary sensibilities*."  ECF No. 1 at 7 (emphasis added). Here, the objective standard emanates likewise from "persons of ordinary sensibilities." So it's sufficiently objective to overcome legal scrutiny. Thus, Plaintiff has failed to state a plausible claim that the Fort Worth Sound Ordinance may be facially unconstitutional.

## C. Plaintiff fails to state a claim of *Monell* liability against the City under § 1983.

Plaintiff also brings claims against the City for allegedly ratifying a custom that led to the asserted constitutional violations in this case.

Because of the various lawsuits against the City concerning similar disputes with Christian preachers, Plaintiff alleges that the City must have been deliberately indifferent and motivated by anti-Christian animus in its alleged failure to train officers to respect the First Amendment. Under his theory, that failure led to the First Amendment violation here. To pass the 12(b)(6) stage, the Plaintiff must plausibly plead that there was "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and

13

(3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. Martinez*, 789 F. Supp. 3d at 529 (quoting *Valle*, 613 F.3d at 541–42). Here, Plaintiff fails to plausibly allege (1) any constitutional violation or (2) a sufficiently widespread custom that the City can be charged with constructive knowledge of.

Plaintiff does not need to identify a specific policymaker at the motion to dismiss stage, rather Plaintiff "need only plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). The City, on the other hand, alleges that Plaintiff fails to allege enough facts to identify the final policymaker. Here, the Plaintiff does more than is needed by identifying the Chief of the Fort Worth Police Department as responsible for enforcing Fort Worth's policies. Regardless, the "final policymaker" inquiry is one more well-suited for the summary judgment stage.

1. <u>No constitutional violation can be attributed to the City.</u>

But, "[a]s is well established, every *Monell* claim requires an underlying constitutional violation." *Hicks-Fields v. Harris County*, 860 F.2d 803, 808 (5th Cir. 2017) (cleaned up). Here, no such violation occurred, and the Fort Worth Sound Ordinance remains constitutional on its own. That alone disposes of this claim. As discussed in Section B, *supra*, the Fort Worth Sound Ordinance is content-neutral and sufficiently balanced to allow for constitutional expression; as discussed in Section A, *supra*, the Officers did not unconstitutionally apply the noise ordinance.

2. <u>No pervasive custom ratified by the City caused a constitutional violation.</u>

With that said, it remains clear that Plaintiff has not pled facts to show that the City ratified a widespread custom of suppressing Christian street preaching "with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 308 (5th Cir. 2023). In other words, the next problem with Plaintiff's Complaint is its failure

14

to plausibly allege an official policy of arresting Christian street preachers after content-based complaints are made. The Court holds that no such custom has been identified by Plaintiff and thus the City did not ratify such a custom as official policy.

Here, Plaintiff lists a scattered history of encounters between the Fort Worth Police Department and Christian street preachers. First, Plaintiff himself names at least seven run-ins with the police—starting in August 2023—concerning his preaching. In only one of those encounters is there any allusion to a content-based citation/arrest, and as explained in Section A, that comment cannot be reasonably construed as motivation to suppress Christian preaching instead of motivation to properly enforce volume restrictions. Otherwise, Plaintiff reminds the Court of encounters between Christian street preachers and Fort Worth police in 2014, 2017, 2019, and 2022. And one of those encounters led to a lawsuit that ended in a consent decree. ECF No. 1, Ex. B. In that consent decree, this Court held that "[t]he City must allow the constitutionally-protected expression of [speakers] [in public]" but that "[n]othing in this consent order and final judgment prevents the City from enforcing reasonable time, place and manner restrictions as allowed by law." ECF No. 1, Ex. B.

But those previous encounters generally did not concern preaching amplified by equipment. That key difference means that no custom of unconstitutionally suppressing Christian street preaching exists. Here, it is Plaintiff's burden to plausibly allege that the "pattern of events has occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford, Tex.*¸ 848 F.3d 384, 396 (5th Cir. 2017), as revised (Mar. 31, 2017).

Starting in the middle of the timeline, in 2021, the City of Fort Worth amended the noise ordinance to be as it is now, following the previous disputes mentioned by Plaintiff. The City changed the noise provision from categorically banning amplification equipment to banning noise at a problematic volume, for instance over ambient noise. ECF No. 1 at 8. Before that amendment, the City allegedly banned any amplified

15

Christian preaching. ECF No. 1 at 7–9. Now, the ban is on preaching above an objectively-defined level of volume. *See supra* Section B. And that new ban was enforced here.

The most recent encounter prior to the facts giving rise to this lawsuit, in 2022, is arguably the most problematic—as alleged by Plaintiff. There, officers told Plaintiff that he could not use a sound amplifier, seemingly at all, and that led to a settlement agreement and payment to Plaintiff. *Torres I*, No. 4:23-cv-00060-O (N.D. Tex. Mar. 29, 2023). But, again, that concerned an absolute ban on amplification. That ban is sufficiently distinct from the constitutional volume limit enforced here. So, the City was not deliberately indifferent to Plaintiff's constitutional rights and thus did not fail to adequately train its officers.

While Plaintiff complains that the 2023 settlement agreement required roll call training concerning the noise ordinance, Plaintiff still must plausibly allege inadequate training. But, Plaintiff's factual assertions manifest a lawful change in approach by the City's Officers from categorical bans on specified speech to protecting speech until it becomes unlawfully loud. And because of that change, Plaintiff's "failure to train" allegations—failure to train the Officers, concerning the First Amendment rights of citizens in public forums—fall flat.

### D. Plaintiff fails to state a claim that all Defendants violated Article I § 8 of the Texas Constitution.

Plaintiff claims Defendants deprived him of his Texas Constitutional rights to liberty and speech. Plaintiff accordingly seeks declaratory and equitable relief. To the extent this claim may seek damages, it fails. *Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995) ("We hold there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution."). Otherwise, the claim fails for the same reasons set forth in Sections A and B, *supra*.

To the extent this claim is against the City, Plaintiff's Complaint fails to plausibly allege a claim. Plaintiff's response claims that governmental immunity is waived against the City because it seeks to challenge the construction or validity of the Fort Worth Sound Ordinance to the extent

16

it might make constitutional speech unlawful. ECF No. 42 at 22. But this is a new argument not mentioned in Plaintiff's Complaint. ECF No 1 at 21. Plaintiff's Complaint asserts that Plaintiff was deprived of rights due to the threat and ultimate arrest of Plaintiff in its two-sentence allegation of a state constitutional violation. ECF No. 1 at 21.

Nowhere in that short and conclusory claim does Plaintiff challenge the validity of the statute; he only references officer Conduct. ECF No. 1 at 21. So the Court need not address any concerns about whether governmental immunity was waived under the Texas Declaratory Judgments Act because the elements of Plaintiff's claim have not been properly alleged and only declaratory relief is sought on this claim.

### E. Plaintiff fails to state a claim that Defendants conspired to violate the First, Fourth, and Fourteenth Amendments, and Texas Constitution Article I § 8 in violation of 42 U.S.C. § 1985.

Plaintiff claims that the Officer Defendants "exhibited an express agreement" between them to enforce the Fort Worth Sound Ordinance against him based on his Christian message and thereby deprived them of their constitutional rights. Thus, Plaintiff claims the Officers and the City are liable.

To the extent the claim is against the City, municipalities cannot legally agree to conspiracies under § 1985. *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (holding a corporate entity and its employees are a single legal entity); *Batiste v. City of Beaumont¸* 421 F. Supp. 2d 969, 986 (E.D. Tex. 2005). And there is no assertion of a conspiracy between different departments within the City of Fort Worth.

To the extent the claim is against the Officers, it cannot stand also because of the intracorporate-conspiracy doctrine. "It is a long-standing rule in this circuit that a 'corporation cannot conspire with itself anymore that a private individual can, and it is the general rule that acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). That doctrine also held that it extends to "multiple defendants employed by the same governmental entity." *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024) (cleaned

17

up). And these Officers are all colleagues working for the City of Fort Worth.

The other glaring problem is that the Complaint alleges religious discrimination instead of racial discrimination. And "in this circuit . . . the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987) (cleaned up). So the Court dismisses this claim.

## CONCLUSION

For the reasons above, the Court **GRANTS** all Motions to Dismiss. Accordingly, all claims against the Officers and the City are **DISMISSED with prejudice.**

**SO ORDERED** on this **27th day of February 2026.**

*[Signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE